LINDA S. WOODS )
)
V. ) NO. 2:15-CV-26
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security )

# REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. The Plaintiff's application for disability insurance benefits was denied following a hearing before an Administrative Law Judge ["ALJ"]. This is an action for judicial review of that decision. The Plaintiff has filed a Motion for Judgment on the Pleadings [Doc. 15], and the Defendant Commissioner has filed a Motion for Summary Judgment [Doc. 17].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*,

745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

The Plaintiff is presently 62 years of age. She alleges that she became disabled as of April 16, 1999. Her insured status for disability insurance benefits expired on June 30, 2003, when she was 50 years of age (Tr. 25). She left elementary school in the 5th Grade when she was only 12 years of age to get married. She did not attend special education classes. (Tr. 16-17). She had past relevant work as a painter and a sander (Tr. 17). Plaintiff asserts that she has severe impairments of degenerative disc disease and borderline intelligence.

The ALJ's opinion is not a masterpiece. The ALJ found that her degenerative disc disease was not severe, but only constituted a medically determinable impairment. He also found that she had that medically determinable impairment through the date she was last insured. (Tr. 15). Contradicting that finding, the ALJ then opined "there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment…" through the date her insured status expired. (Tr. 16). He also found that she had no mental impairment which even rose to the level of being a medically determinable impairment. (Tr. 15). He stated that even if she did have

2

borderline intellectual functioning, she could return to her past relevant work (Tr. 17).

This record contains a paucity of medical evidence but that evidence is accurately summarized by the Defendant Commissioner as follows:

> Floyd J. Barker, D.O., noted sciatica at a visit in January 1999, predating the alleged period of disability (Tr. 201). Dr. Barker treated Plaintiff for general medical complaints, left shoulder and arm pain, and menstrual issues (Tr. 179-208). Many of his treatment records are illegible (Tr. 179-208, 215-23). An imaging study of Plaintiff's lumbar spine in November 2001 showed degenerative changes (Tr. 214).
> In a disability report completed as part of her benefits application, Plaintiff stated that she had a fifth grade education and did not take special education classes (Tr. 155). Plaintiff's school records show IQ scores of 74 on the Thorndike intelligence test, 81 on the Detroit intelligence test, and 93 on the Kuhlmann intelligence test (Tr. 288).
> At an administrative hearing on August 19, 2010, Plaintiff testified that she quit working in furniture factories because she could "hardly walk" and experienced back aggravation (Tr. 233). She said she left school to get married at age 12 or 13 (Tr. 234). Her only medical treatment consisted of primary care visits with Dr. Barker (Tr. 234). She never saw an orthopedic surgeon (Tr. 235). Back problems and education were the only issues that kept her from working (Tr. 235). Theron Blickenstaff, M.D., a medical expert, testified that he reviewed the record (Tr. 236). Dr. Blickenstaff testified that the November 2001 imaging study of Plaintiff's lumbar spine showed degenerative disc disease (Tr. 236). He said that the remainder of the record was "very sparse," and noted that Dr. Barker's primary care records were not completely legible (Tr. 236-37). Plaintiff's attorney said Dr. Barker was still practicing medicine and indicated that he would contact him for clarification (Tr. 237). The ALJ granted Plaintiff's attorney 30 days to obtain such evidence (Tr. 237). Dr. Blickenstaff said it was "possible" the degenerative disc disease indicated in the November 2001 imaging study caused some level of pain prior to Plaintiff's date last insured in 2003 (Tr. 237). He testified that "at the most restrictive," he might advise an exertional limitation to lifting no more than 40 pounds occasionally and 20 pounds frequently (Tr. 237-38). Dr. Blickenstaff said it would be unusual to have a completely normal lumbar spine x-ray at age 49, Plaintiff's age at the time of the 2001 imaging study (Tr. 238). He said he did not consider Plaintiff's imaging study "unusual at all," and said that although there was no average, "I think you could describe these findings as possibly typical for someone of that age" (Tr. 238).
> At a second administrative hearing on July 31, 2012, Robert Spangler, a vocational expert, testified in response to a hypothetical assuming an individual of Plaintiff's age at the time of her date last insured, with a fifth grade education (Tr. 25). The individual had a borderline IQ, which restricted her to simple, repetitive

3

work (Tr. 25). The individual was also limited to light work (Tr. 25). Mr. Spangler testified to 129,460 jobs in the national economy and 3,000 in Tennessee that such an individual could perform, including cafeteria line food preparer, some server positions, dining room helper, some dishwasher positions, some isolated small church janitor positions, some light maid positions, non-farm animal care, personal care worker, and restroom towel attendant (Tr. 26). He indicated that those numbers amounted to less than three percent of the total number of unskilled light jobs in the national and Tennessee economies (Tr. 27). Mr. Spangler said that, if the individual described above had no physical limitations, she could additionally perform marginal heavy exertional positions, including 36,290 nationally and 900 in Tennessee, and marginal medium exertional positions, including 42,000 nationally and 300 in Tennessee (Tr. 26-27). Mr. Spangler said his testimony was consistent with the Dictionary of Occupational Titles (Tr. 26).

[Doc. 18, pgs. 2-4].

This case was the subject of two hearings and two administrative decisions by the ALJ. In the first hearing decision rendered October 20, 2010, the ALJ found that "[t]hrough the date last insured, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment." (Tr. 36). On March 13, 2012, the Appeals Council ["AC"], the next level of administrative review, remanded the case back to the ALJ for further evaluation.

The AC stated that the record showed that the Plaintiff, based on the diagnostic testing and the testimony of the medical expert, had a medically determinable impairment prior to her date last insured. (Tr. 44). The remand order noted that in light of the MRI, the opinion of Dr. Blickenstaff, and the oral finding by the ALJ that he would find Plaintiff had a borderline IQ, the ALJ "finding that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment prior to the claimant's last date insured is error." (Tr. 44). The AC instructed the ALJ,

4

on remand, to "consider the opinion of the medical expert and continue through the sequential evaluation process." (Tr. 45).

At the second administrative hearing, the only witness was Dr. Robert Spangler, the VE, who testified regarding his opinion on the jobs the Plaintiff could perform. The ALJ asked Dr. Spangler to assume that the claimant had a "fifth grade education[,] … a borderline IQ, which would restrict her to simple, repetitive, that she is limited to light work, a full range of light work" and that she was 50 years old (Tr. 25). Dr. Spangler indicated that the fifth grade education would place her in the "marginal classification of simple" (Tr. 26). He identified about 3,000 jobs in the State of Tennessee and cited a number of different examples of "light, marginal ed …simple, repetitive" jobs. Those included food preparation, cafeteria lines, some servers, and the like.

In the present hearing decision under review, issued August 16, 2012 and affirmed by the Appeals Council (Tr. 1), the ALJ found that the Plaintiff had the medically determinable impairment of degenerative disc disease. (Tr. 15). However, he also found, once again at Step Two of the evaluation process, that "there is not sufficient medical evidence to establish the existence of a severe impairment prior to the claimant's date last insured…" *Id.* He noted that Dr. Barker's records were illegible, which is true (Tr. 16). He considered Dr. Blickenstaff's testimony from the first hearing that Plaintiff did not meet any of the Listing of Impairments in the regulations and that the Plaintiff's MRI showed findings "that could be typical for that age." *Id.*

5

The ALJ noted that the only medical evidence of this condition by acceptable diagnostic techniques was the MRI, which showed minimal scoliosis and vertebral body heights maintained. (Tr. 17). He concluded that "[o]ne office visit for acute lumbar strain does not constitute a 'severe' impairment because the claimant's impairment did not last nor could have been expected to last for 12 continuous months as required by the Social Security Regulations." (Tr. 18). He then stated that he did not accept Dr. Blickenstaff's "speculation" about the Plaintiff's residual functional capacity because there was not conclusive acceptable evidence that a severe impairment even existed. *Id.*

The ALJ then stated why he did not believe that the Plaintiff had a severe mental impairment due to her stated reasons for leaving school and her IQ scores, noting that this would not have prevented her from doing her past relevant work. He stated that he based his finding that she did not have a severe impairment on the lack of objective findings. *Id.*

More importantly, the ALJ found that even if she had a severe impairment which limited her to unskilled work, that there were 900 jobs at the medium level of exertion and 3,000 jobs at the light level of exertion in Tennessee. Accordingly, he found that she was not disabled. (Tr. 19).

Plaintiff asserts that the ALJ erred in several respects. First, she states that it was error for him to conclude she did not have a severe impairment, asserting that this was not consistent with the remand order by the AC, and contrary to the evidence which showed she has both a severe physical and mental impairment. Second, she asserts that

6

the hypothetical question to the VE which identified jobs in Tennessee and the national economy did not include the fact that she has a borderline IQ. Third, she complains that the ALJ did not follow the dictates of Social Security Ruling 83-14 which requires him to determine the extent to which her ability to do a full or wide range of light work is compromised. Finally, she asserts that the ALJ erred in not finding her testimony to be credible, saying that all of her testimony is supported by the medical evidence.

On the first issue, what the ALJ did was not inconsistent with the remand order by the AC. The AC found that the ALJ erred in "finding that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment prior to the claimant's date last insured…" (Tr. 44). The AC then charged him to "continue through the sequential evaluation process." (Tr. 45). On remand, the ALJ found that the Plaintiff did have a medically determinable physical impairment of degenerative disc disease, but refused to find that it was severe based solely on the single MRI finding in 2001 and Dr. Blickenstaff's interpretation that it could cause some diminution of Plaintiff's RFC.

Even though the Court finds that the ALJ did not act inconsistent with the order of remand, that does not mean that the ALJ came to the correct conclusion regarding the severity of the impairment. Plaintiff complains that the evidence was that she had both a severe physical and mental impairment. The Sixth Circuit has uniformly held that "the step two severity regulation...has been construed as a *de minimis* hurdle in the disability determination process...Under the prevailing *de minimis* view, an impairment can be

7

considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)(citations omitted). The *de minimis* standard exists to allow "the threshold dismissal of claims obviously lacking medical merit." *Id.* "The purpose of the second step of the sequential analysis is to enable the Commissioner to screen out 'totally groundless claims.'" *Griffeth v. Commissioner of Social Security*, 217 F. App'x 425, 428 (6th Cir. 2007), quoting *Farris v. Sec'y of HHS*, 773 F.2d 85, 89 (6th Cir. 1985). Given this standard set out by the Sixth Circuit, the Court finds that the ALJ's conclusion that the impairment was not severe was in error.

The ALJ asked Dr. Spangler to assume the Plaintiff had a fifth grade education and a borderline IQ which would restrict her to simple, repetitive, light work at age 50. (Tr. 25). First, the ALJ asked if she could return to any past relevant work, and Dr. Spangler opined she could not. He then asked if there were any jobs she could have done with that RFC in 2003 before her insured status expired. Dr. Spangler apparently hesitated, and stated that "the fifth grade education is the problem, because that puts her in the marginal classification of simple." (Tr. 26). The Court simply cannot say that a factor which caused the VE such difficulty has no more than a minimal impact on work ability.

The next issue is whether the effect of that error was harmless in light of the further analysis conducted by the ALJ. The ALJ called Dr. Spangler, the VE, to testify. The ALJ's hypothetical asked the VE to assume the claimant had a "fifth grade

8

education[,] … a borderline IQ, which would restrict her to simple, repetitive, that she is limited to light work, a full range of light work" and that she was 50 years old. Based on that hypothetical, the VE testified that there were 3,000 light, unskilled, simple, repetitive jobs which a person could perform who had the limitations described in the ALJ's hypothetical. This testimony necessarily renders any error for failure to find a severe impairment harmless.

Contrary to the Plaintiff's second assignment of error, the ALJ clearly included in his hypothetical "borderline intellectual functioning" and the marginal 5th grade education, and this hypothetical led to the identification of a significant number of jobs such a person could perform. (Tr. 26). While there is no "magic number" in evaluating whether a job exists in significant numbers, the Sixth Circuit has held that as few as 1,350 jobs in the local economy constituted a significant number of jobs. *Hall v. Bowen*, 837 F.2d 272, 274-75, (6th Cir. 1988).

Plaintiff's third assignment of error is that the ALJ erred in not applying Social Security Ruling 83-14. However, the very last sentence of that ruling states that "where the adjudicator does not have a clear understanding of the effects of additional limitations on the job base, the services of a VS will be necessary." The ALJ did utilize Dr. Spangler, and he identified a significant number of jobs.

Finally, Plaintiff asserts that the ALJ erred in failing to find her subjective complaints completely credible. To support this, she asserts that her subjective complaints are completely consistent with the medical evidence. However, as previously

9

stated, the medical evidence is nearly non-existent. The MRI is the only evidence to support her contentions, and it did not appear to show atypical conditions for a person of the Plaintiff's age, at least in the opinion of Dr. Blickenstaff. Indeed, the physician who interpreted the MRI and concluded that there was degenerative disc disease present noted only "minimal" scoliosis with vertebral heights maintained. (Tr. 214). Also, there was no record whatsoever of any follow up treatment with any specialist.

The administrative adjudication of Plaintiff's claim was not a masterpiece of clarity. But in the final analysis, there was substantial evidence to support the hypothetical question to the VE. That is the crux of the case. Any error in failing to find a severe impairment was subsumed and cured by Dr. Spangler's testimony. Accordingly, the Court must recommend that the Plaintiff's Motion for Judgment on the Pleadings [Doc. 15] be DENIED, and the Defendant Commissioner's Motion for Summary Judgment [Doc. 17] be GRANTED.[1]

Respectfully submitted,

s/ Clifton L. Corker
United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).

10

Case 2:15-cv-00026-JRG-MCLC  Document 19  Filed 12/03/15  Page 10 of 10  PageID #: 314